NOT RECOMMENDED FOR PUBLICATION
**File Name: 25a0558n.06**

No. 25-5104

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 04, 2025
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

SAMUEL C. ATKINS,
Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

BEFORE: McKEAGUE, GRIFFIN, and MATHIS, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Samuel C. Atkins pleaded guilty to being a felon in possession of a firearm and two drug offenses. When determining Atkins's total offense level at sentencing, the district court included large shipments of drugs he received before his arrest to calculate the relevant drug weight, and it applied a firearm enhancement for possession of a dangerous weapon during the charged drug offenses. The district court then imposed a two-level upward departure based on four jailhouse overdoses caused by Atkins following his arrest and sentenced him to 396 months. Atkins appeals, challenging the district court's calculation of the relevant drug weight, the firearm enhancement, and the two-level upward departure. He also argues that his sentence is substantively unreasonable. We affirm.

I.

Atkins had outstanding warrants related to guns and drugs from two counties in Kentucky. Based on these warrants, law enforcement arrested Atkins at his residence and completed a search

on January 3, 2023. The search yielded 16 firearms, over 4 grams of fluorofentanyl, and 17 grams of methamphetamine.

After his arrest, Atkins described himself as a career "dope dealer" who cut and sold drugs for money and sometimes for guns. Atkins also told officers that in 2022, the year before his arrest, he obtained five to ten pounds of methamphetamine and a kilogram of heroin once or twice a month from May to October.

Atkins was booked into the Madison County Detention Center. On January 5, 2023, four inmates overdosed, which led to two hospitalizations. A subsequent search of Atkins's jail cell uncovered approximately 11 grams of a mixture containing fluorofentanyl, 33 grams of a mixture containing fluorofentanyl and fentanyl, and 27 grams of a mixture containing fentanyl. Atkins admitted that he brought the drugs into the facility and distributed them to those who had overdosed.

The government charged Atkins with five counts: possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession with the intent to distribute a mixture or substance containing a detectable amount of fluorofentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count 2); possession with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count 3); distribution of a mixture or substance containing fluorofentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count 4); and possession with intent to distribute 10 grams or more of a mixture or substance containing fluorofentanyl and 40 grams or more of a mixture or substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count 5). Atkins pleaded guilty to Counts 1, 4, and 5.

The probation officer prepared a presentence report and calculated the relevant drug weight for Counts 4 and 5. When calculating this weight, the probation officer included amounts based on Atkins's statements concerning his prearrest drug trafficking in 2022, as well as the drugs seized at his residence and in his jail cell. All told, the total drug weight attributable to Atkins on Counts 4 and 5 was 49.213 grams of fluorofentanyl, 27.532 grams of a mixture or substance containing fentanyl, 17 grams of a mixture or substance containing methamphetamine, 30 pounds of a mixture or substance containing methamphetamine, and a kilogram of heroin.

Based in part on this drug weight, Atkins's base offense level was 34. The presentence report recommended a two-level firearm enhancement for possession of a dangerous weapon during the drug crimes charged under Counts 4 and 5 and another two-level enhancement because he distributed drugs in the county detention facility. After a three-level reduction for Atkins's acceptance of responsibility, the presentence report recommended a total offense level of 35. With a criminal history category of VI, the presentence report set Atkins's Guidelines sentencing range at 292 to 365 months of imprisonment.

The government, however, moved for a six-level upward departure under U.S.S.G. § 5K2.2 based on the "significant injury" related to the four inmate overdoses caused by Atkins's drug dealing in the county detention center. If imposed, the Guidelines sentencing range would become 360 months to life.

Atkins objected to the presentence report. He argued that the base-offense-level drug weight should include only the drugs seized from his jail cell, which formed the basis for Counts 4 and 5, and not the drugs related to his prearrest conduct or Counts 2 and 3. He also argued that the two-level firearm enhancement was improper because he did not possess a firearm while distributing drugs in the county detention facility.

At sentencing, the district court adopted the presentence report and overruled Atkins's objections. First, the district court found that Atkins's distribution of drugs "occurred throughout the entire period, beginning in as early as May [2022] and then continuing until the time that he was arrested," so it was proper to consider both the prearrest amounts and the amounts seized at his residence. The district court credited Atkins's admissions to law enforcement and discerned that Atkins's "primary goal was to distribute controlled substances." The district court also found that his arrest did "not break the chain in terms of relevant conduct," as he continued to deal drugs in jail after his arrest. The court also found that the firearms at his residence were possessed in connection with the offenses because Atkins "was continuing to distribute controlled substances while he . . . had [the guns] in his possession" at the time of his arrest. It did not matter that Counts 2 and 3 were ultimately dismissed as part of Atkins's plea agreement.

The district court then granted the government's motion for an upward departure—but applied only a two-level departure, not the six that the government had requested. The district court recognized that a two-level departure and six-level departure would produce the same Guidelines range. It stated that, although "there's no indication that [those who overdosed] suffered permanent disability or that the injury was intentionally inflicted," Atkins distributed "potent" fentanyl and fluorofentanyl "with blatant disregard for the fact that individuals that do not have a tolerance for these particular controlled substances may overdose and may die."

The result was a total offense level of 37 and a Guidelines range of 360 months to life. When deciding Atkins's sentence, the district court considered the factors listed under 18 U.S.C. § 3553(a), including the risk of recidivism, Atkins's age and family support, and the sentencing disparity among defendants with similar records. The district court also characterized Atkins's offenses as "very serious, as underlined by the overdoses that occur[ed]." And it recognized the

need to deter individuals from selling drugs to protect the public. Having considered these factors, the district court imposed a sentence of 396 months. Atkins timely appealed.

II.

Atkins argues that the district court erred (1) in its calculation of the base offense level, under U.S.S.G. § 2D1.1, (2) in its two-level firearm enhancement when determining the total offense level, under U.S.S.G. § 2D1.1(b)(1), (3) in its two-level upward departure when determining the applicable sentencing range, under U.S.S.G. § 5K2.2, and (4) in imposing a substantively unreasonable sentence. We address his Guidelines challenges before turning to the substantive reasonableness of his sentence.

A.

We review the district court's interpretation of the Guidelines de novo and its findings of fact for clear error. *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002). We review the district court's decision to depart from the Guidelines for abuse of discretion. *United States v. Gillispie*, 929 F.3d 788, 789 (6th Cir. 2019).

1.

To calculate a base offense level, the district court must determine the quantity of drugs attributable to a defendant. U.S.S.G. § 2D1.1; *United States v. Penaloza*, 784 F. App'x 341, 346 (6th Cir. 2019). To do so, the district court must consider drugs "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

A "common scheme or plan" may include prior drug transactions that are "substantially connected" to the offense of conviction "by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n.5(B)(i). Likewise, the "same course of conduct" may include relevant conduct that is

"sufficiently connected or related to" conduct underlying the offense of conviction, if they "warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 cmt. n.5(B)(ii).

When determining whether prior, uncharged drug transactions are substantially connected to transactions underlying the offense of conviction, we consider the "degree of similarity," the "regularity," and "the time interval" between the transactions. *United States v. Phillips*, 516 F.3d 479, 483 (6th Cir. 2008). Although we lack a brightline rule, "where one of the factors is weak or absent, there must be a substantially stronger showing of at least one other factor." *United States v. Hill*, 79 F.3d 1477, 1484 (6th Cir. 1996). We have recognized the "considerable overlap" between the terms "same course of conduct" and "common scheme or plan," and that the same factors supporting a finding of a "common scheme or plan" may bolster the similarity factor in analyzing "same course of conduct." *Id.* at 1482–83.

Atkins contends that the district court erred in its drug quantity calculation because it included the large shipments of drugs he received between May and October 2022 and the drugs seized at his residence. He argues that the district court should have included only the drugs seized from his jail cell because only those drugs underlie Counts 4 and 5—the drug counts to which he pleaded guilty. We disagree because relevant conduct under U.S.S.G. § 1B1.3(a)(2) does not have to mirror the conduct underlying the drug offenses to which Atkins pleaded guilty. The district court correctly found that the other drug amounts were part of the same course of conduct or common scheme or plan.

First, Atkins's prearrest drug shipments were close enough in time to consider at sentencing. Atkins told law enforcement that he received five to ten pounds of methamphetamine once or twice a month from May to October in 2022, only three months before he was arrested.

He also received one kilogram of heroin once or twice per month during this time. A three-month gap is not too remote for consideration. *Compare United States v. Kappes*, 936 F.2d 227, 230–31 (6th Cir. 1991) (finding six years too remote), *with United States v. Miller*, 910 F.2d 1321, 1327 (6th Cir. 1990) (finding twenty months not too remote).

Further, Atkins's prior drug shipments reflect a similar modus operandi and an ongoing drug-trafficking spree. Atkins told police he was a "dope dealer" for most of his adult life. And whether Atkins was selling drugs while free or while incarcerated makes no meaningful difference here. *See Hill*, 79 F.3d at 1483 ("[A] lapse of time between prior conduct and the offense of conviction does not necessarily indicate that a defendant abandoned a particular course of conduct; rather, such a lapse may result when participants are forced to put the venture 'on hold.'" (citation omitted)). Indeed, despite his incarceration, Atkins continued his drug trade inside the county detention center. Atkins's arrest did not break the causal chain because he smuggled his drugs into the detention center. The buyers and locale may have changed, but the seller and product stayed the same—all in a relatively close time frame.

The same analysis applies to the drugs seized at Atkins's residence on January 3, 2023. The temporal nexus is even tighter, a mere two days. And had Atkins not smuggled the drugs into the facility, they may have been found at his residence—along with the other drugs and guns. Thus, because his arrest did not break the causal chain or stymie his drug trafficking spree, the drugs seized at Atkins's residence were properly included in the drug weight.

In sum, the district court did not err when calculating the drug quantity attributable to Atkins under U.S.S.G. § 2D1.1.

2.

Atkins argues that the district court also erred in applying a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1) when calculating his total offense level. Section 2D1.1(b)(1) provides a two-level enhancement "when the government establishes by a preponderance of the evidence that (1) the defendant actually or constructively possessed the dangerous weapon (2) during the offense." *United States v. Mosley*, 53 F.4th 947, 966 (6th Cir. 2022). To qualify, the "weapon need not be possessed during the commission of the actual offense of conviction." *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020). Instead, the government needs to show that the defendant possessed the weapon during relevant conduct that is substantially connected to the offense of conviction, as established in U.S.S.G. § 1B1.3. *Id.*

A rebuttable presumption arises if the government shows that the defendant possessed a weapon during any relevant conduct. *Id.* at 188. A defendant may overcome the presumption by showing that it was "clearly improbable that the weapon was connected with the offense." *Id.* (quoting U.S.S.G. § 2D1.1 cmt. n.11(A)). For example, a defendant could demonstrate that it was clearly improbable that a weapon was connected to the offense by showing that the weapon was not within a "close proximity" at the time of arrest, *United States v. Nance*, 40 F. App'x 59, 68 (6th Cir. 2002), or through a credible witness who could establish that the weapon was not connected to the offense of conviction, *United States v. Peters*, 15 F.3d 540, 546 (6th Cir. 1994).

Atkins did nothing of the sort at sentencing. He did not offer any evidence to show that it was clearly improbable that the guns were not connected with the offense. He merely argued that his arrest constituted an intervening event that severed any connection between his pre-incarceration firearm possession and his drug offenses while incarcerated. The district court expressly rejected that argument. So do we.

Atkins argues that he did not possess firearms during the conduct underlying Counts 4 and 5 and that the government failed to meet its burden. In his view, his possession of firearms before his arrest was not relevant conduct under U.S.S.G. § 1B1.3(a)(2) and thus the two-level enhancement under § 2D1.1(b)(1) should not apply.

The guns underlying the two-level enhancement were seized alongside the drugs at Atkins's home, and Atkins smuggled some of those same drugs into the jail after his arrest. Again, Atkins was a career "dope dealer," and his conduct continued into his incarceration. And while the guns at issue were not in the jail itself, the guns stemmed from his drug trade: Atkins told law enforcement that some of the 16 firearms at his residence were from individuals trading guns for drugs.

The seized guns flowed from Atkins's drug trade. Thus, they constitute relevant conduct that is substantially connected to the offense of conviction. Accordingly, the district court did not err in applying the two-level firearms enhancement.

3.

The presentence report recommended a Guidelines range of 292 to 365 months. The district court departed upward by two levels, however, which resulted in a sentencing range of 360 months to life. Atkins contends the district court erred in doing so.

A district court may depart from the original Guidelines range if "significant physical injury resulted" from the offense conduct. U.S.S.G. § 5K2.2. The departure "should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked." *Id.* "The language in § 5K2.2 evidences an intent to allow for a flexible, factual inquiry." *United States v. Prince*, 749 F. App'x 396, 400 (6th Cir. 2018).

We have affirmed upward departures based on injuries caused by overdoses. In *Prince*, we affirmed a district court's upward departure under § 5K2.2 because that defendant sold heroin to an individual who suffered an overdose. *Id.* at 401. And in *Gillispie*, we found that a significant injury occurred within the meaning of § 5K2.2 when a man overdosed on fentanyl supplied by the defendant and suffered serious ailments. 929 F.3d at 789–90.

Similarly, here, the district court did not abuse its discretion in applying a two-level enhancement to Atkins's sentence. Atkins smuggled drugs into the county detention center and distributed the drugs to other inmates, causing *four* overdoses. Moreover, the district court correctly considered that Atkins trafficked drugs into the county detention center "with blatant disregard for the fact that individuals that do not have a tolerance for these particular controlled substances may overdose and may die."

We find no abuse of discretion here. The district court's upward departure properly accounted for the dangerousness of Atkins's conduct and the significant physical injuries that resulted.

B.

Finally, Atkins argues that his 396-month sentence is substantively unreasonable. We review a district court's sentence for substantive reasonableness using the deferential abuse-of-discretion standard. *United States v. Evers*, 669 F.3d 645, 661 (6th Cir. 2012). A sentence is not substantively unreasonable simply because we "might reasonably have concluded that a different sentence was appropriate." *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court abuses its discretion, however, if it "arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight

to any pertinent factor." *United States v. Robinson*, 892 F.3d 209, 213 (6th Cir. 2018) (quoting *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012)).

Atkins complains that the district court relied too heavily on his history of drug trafficking and that the court gave too little weight to his age and low risk of recidivism. We again find no error.

The record reflects that the district court properly considered and weighed the § 3553(a) factors. For example, the district court appropriately categorized the seriousness of Atkins's conduct, pointing to the four overdoses. The district court also considered Atkins's familial support, the need to deter this type of conduct to protect the public, and the need to avoid unwarranted sentencing disparities. And the district court expressly discussed Atkins's age and the "reduced risk of recidivism," while acknowledging his "very high" Guidelines range.

Nothing suggests that the district court gave too much or too little weight to one § 3553(a) factor. And we "must give 'due deference' to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (quoting *Gall*, 552 U.S. at 51). A sentence is not unreasonable "just because [a defendant] thinks the district court should have balanced the sentencing factors differently." *United States v. Russell*, 2022 WL 203330, at *2 (6th Cir. Jan. 24, 2022). Atkins's sentence is not substantively unreasonable.

III.

We affirm the judgment of the district court.